**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LENNOX FREEMAN, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **No: 17-cv-5162** |
| **-against-** | |
| **RIVER MANOR CORP. d/b/a ATRIUM CENTER FOR REHABILITATION AND NURSING; RIVER MANOR CARE CENTER, INC.; EXCELSIOR CARE GROUP, LLC; RIVER MANOR ACQUISITION I, LLC; RIVER MANOR ACQUISITION II, LLC; CONSTANCE LEIFER, individually; and JOEL LEIFER, individually;** | **CLASS ACTION COMPLAINT** |
| **Defendants.** | |

Lennox Freeman ("Freeman" or "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover overtime compensation, agreed upon wages, unlawful deductions, and other damages for Plaintiff and his similarly situated co-workers – licensed practical nurses ("LPNs") – who work or have worked for Atrium Center for Rehabilitation and Nursing located at 611 E. 103rd Street, Brooklyn, New York 11236 ("Atrium Center"), formerly known as River Manor Care Center.

2.      Owned and operated by River Manor Corp., River Manor Care Center, Inc.,
Excelsior Care Group, LLC; River Manor Acquisition I, LLC, and River Manor Acquisition II,
LLC, Constance Leifer, and Joel Leifer (collectively, "Defendants"), Atrium Center is a 24-hour
care center offering short-term rehabilitation, skilled nursing, and long-term care.

3.      With approximately 380 beds and 7 floors, Atrium Center is a 24-hour facility and
employs, among other positions, LPNs to provide patient care.  LPNs generally job duties include
but are not limited to providing medication to patients, dressing wounds, changing wound
dressings, making rounds, checking in on patients, feeding patients, checking patients for injuries,
bathing patients, and filling out paperwork related to patients.

4.      Atrium Centers organizes its work force into 3 shifts – an evening shift, an
overnight shift, and a morning shift.  The evening shift is scheduled from 4:00 pm to 12:00 am, the
night shift from 12:00 am to 8:00 am, and the morning shift from 8:00 am to 4:00 pm.

5.      Despite these scheduled hours, Defendants have instituted a policy and practice in
which LPNs are required to work well past their scheduled end times in order to finish making
their rounds and providing patient care.  When LPNs work past their scheduled shifts, they do so in
plain view of Defendants' management.

6.      Despite having knowledge that LPNs regularly work past the end of their
scheduled shift, Defendants do not pay LPNs any compensation for this additional compensable
time.

7.      Additionally, Defendants have instituted a policy and practice that automatically
deducts one hour of break time from LPNs scheduled shifts.  However, Plaintiff and LPNs
regularly do not have time to take this break time due to patient needs.  In the event that Plaintiff
and LPNs cannot take this break time, Defendants nonetheless automatically deduct this one

2

hour time from their compensable time.

8.     Defendants at all times have compensated Plaintiff and other LPNs on an hourly rate basis.

9.     Despite being non-exempt employees, Atrium Center has failed to properly pay Plaintiff and other LPNs overtime compensation at 1.5 times their regular rate of pay when they work over 40 hours per week.  Specifically, Defendants failed to add together all compensable time, including time worked past LPNs scheduled end time and time deducted as automatic break time, for the purposes of overtime compensation.

10.     Defendants have also instituted a policy and practice of applying unlawful deductions onto Plaintiff's and similarly situated LPN's wages.  These include, but are not limited to, deductions for transportation and uniforms, and also other unknown deductions noted as: "AMT LNGVITY," "NR," "TR," "UF N," and "LNGVITT."

11.     Plaintiff brings this action on behalf of himself and all other similarly situated LPNs who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b).

12.     Plaintiff also brings this action on behalf of himself and all other similarly situated LPNs in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

<u>**THE PARTIES**</u>

<u>**Plaintiff**</u>

**Lennox Freeman**

13.     Freeman is an adult individual who is a resident of Brooklyn, New York.

14.     Freeman was employed by Atrium Center as a LPN from approximately 2004 through March 2016.

15.     Freeman is a covered employee within the meaning of the FLSA and the NYLL.

16.     A written consent form for Freeman is being filed with this Class Action Complaint.

**Defendants**

17.     Defendants jointly employed Plaintiff and similarly situated employees at all times relevant.

18.     Each Defendant has had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

19.     During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA and the NYLL.

**River Manor Corp.**

20.     Together with other Defendants, River Manor Corp. has owned and/or operated Atrium Center during the relevant time period.

21.     River Manor Corp. is a domestic for-profit corporation organized and existing under the laws of New York.

22.     According to the New York State Division of Corporations, River Manor Corp.'s principal executive office is located at 630 East 104th Street, Brooklyn, New York 11236, the same building as Atrium Center.

23.     River Manor Corp. is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

24.     At all times relevant, River Manor Corp. has maintained control, oversight, and

direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

25.     River Manor Corp. applies the same employment policies, practices, and procedures to all LPNs in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

26.     Upon information and belief, at all relevant times, River Manor Corp. has had an annual gross volume of sales in excess of $500,000.

**River Manor Care Center, Inc.**

27.     Together with other Defendants, River Manor Care Center, Inc. has owned and/or operated Atrium Center during the relevant time period.

28.     Based on information and belief, River Manor Care Center, Inc. is a domestic for-profit corporation organized and existing under the laws of New York.

29.     River Manor Care Center, Inc. is the entity that appears on paystubs received by Plaintiff for work performed at Atrium Center.  The address listed for this entity on the paystubs is 611 East 103rd Street, Brooklyn, New York 11236, the same building as Atrium Center.

30.     River Manor Care Center, Inc. is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

31.     At all times relevant, River Manor Care Center, Inc. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

32.     River Manor Care Center, Inc. applies the same employment policies, practices, and procedures to all LPNs in its operation, including policies, practices, and procedures with

respect to payment of overtime compensation.

33.     Upon information and belief, at all relevant times, River Manor Corp. has had an annual gross volume of sales in excess of $500,000.

**Excelsior Care Group, LLC**

34.     Together with other Defendants, Excelsior Care Group, LLC has owned and/or operated Atrium Center during the relevant time period.

35.     Excelsior Care Group, LLC. is a domestic for-profit limited liability company organized and existing under the laws of New York.

36.     According to the New York State Division of Corporations, Excelsior Care Group, LLC's principal executive office is located at 1551 52nd Street, Brooklyn, New York 11219.

37.     Excelsior Care Group, LLC is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

38.     At all times relevant, Excelsior Care Group, LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

39.     Excelsior Care Group, LLC applies the same employment policies, practices, and procedures to all LPNs in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

40.     Upon information and belief, at all relevant times, Excelsior Care Group, LLC has had an annual gross volume of sales in excess of $500,000.

**River Manor Acquisition I, LLC**

41.     Together with other Defendants, River Manor Acquisition I, LLC has owned and/or operated Atrium Center during the relevant time period.

42.     River Manor Acquisition I, LLC. is a domestic for-profit corporation organized and existing under the laws of New York.

43.     According to the New York State Division of Corporations, River Manor Acquisition I, LLC's DOS Process address is listed as Corporation Service Company, 80 State Street, Albany, New York 12207.

44.     River Manor Acquisition I, LLC appears as a mortgagor for the entire lot located at 630 East 104th Street, Brooklyn, New York 11236, the commercial property that houses the Atrium Center.

45.     River Manor Acquisition I, LLC is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

46.     At all times relevant, River Manor Acquisition I, LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

47.     River Manor Acquisition I, LLC applies the same employment policies, practices, and procedures to all LPNs in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

48.     Upon information and belief, at all relevant times, River Manor Acquisition I, LLC has had an annual gross volume of sales in excess of $500,000.

**River Manor Acquisition II, LLC**

49.     Together with other Defendants, River Manor Acquisition II, LLC has owned and/or operated Atrium Center during the relevant time period.

50.     River Manor Acquisition II, LLC. is a domestic for-profit corporation organized and existing under the laws of New York.

51.     According to the New York State Division of Corporations, River Manor Acquisition II, LLC's DOS Process address is listed as Corporation Service Company, 80 State Street, Albany, New York 12207.

52.     River Manor Acquisition II, LLC appears as the mortgagor for the entire lot located at 630 East 104th Street, Brooklyn, New York 11236, the commercial property that houses the Atrium Center.

53.     River Manor Acquisition II, LLC is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

54.     At all times relevant, River Manor Acquisition II, LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

55.     River Manor Acquisition II, LLC applies the same employment policies, practices, and procedures to all LPNs in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

56.     Upon information and belief, at all relevant times, River Manor Acquisition I, LLC has had an annual gross volume of sales in excess of $500,000.

**Constance Leifer**

57.     Together with other Defendants, Constance Leifer ("C. Leifer") has owned and/or operated Atrium Center during the relevant time period.

58.     Upon information and belief, C. Leifer is a resident of the State of New York.

59.     At all relevant times, C. Leifer has been a co-owner and co-operator of Atrium Center.

60.     According to the New York Secretary of State – Division of Corporations, C. Leifer is identified as the "Principal Executive Officer" for River Manor Corp.

61.     C. Leifer maintains a direct and significant management role in Atrium Center.

62.     At all relevant times, C. Leifer has had the power over payroll decisions at Atrium Center, including the power to retain time and/or wage records. In that regard, C. Leifer set Plaintiff's rate of pay and authorized his raise.

63.     At all relevant times, C. Leifer has been actively involved in managing the day to day operations of Atrium Center.

64.     At all relevant times, C. Leifer has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees at Atrium Center.

65.     At all relevant times, C. Leifer has had the power to transfer the assets and/or liabilities of Atrium Center.

66.     At all relevant times, C. Leifer has had the power the declare bankruptcy on behalf of Atrium Center.

67.     At all relevant times, C. Leifer has had the power to enter into contracts on behalf of Atrium Center.

68.     At all relevant times, C. Leifer has had the power to close, shut down, and/or sell

Atrium Center.

69.     C. Leifer is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff and similarly situated employees.

**Joel Leifer**

70.     Together with other Defendants, Joel Leifer ("J. Leifer") has owned and/or operated Atrium Center during the relevant time period.

71.     Upon information and belief, J. Leifer is a resident of the State of New York.

72.     At all relevant times, J. Leifer has been a co-owner and co-operator of Atrium Center.  In this regard, J. Leifer signed on behalf of both River Manor Acquisition I, LLC and River Manor Acquisition II, LLC on the mortgage for the commercial property located at 630 East 104th Street, Brooklyn, New York 11236.

73.     J. Leifer maintains a direct and significant management role in Atrium Center.

74.     At all relevant times, J. Leifer has had the power over payroll decisions at Atrium Center, including the power to retain time and/or wage records.  In this regard, J. Leifer identified himself as the Administrative Director of Atrium Center since 2010 to the New York Department of Health Council in April 2017.[1]

75.     At all relevant times, J. Leifer has been actively involved in managing the day to day operations of Atrium Center.

76.     At all relevant times, J. Leifer has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees at Atrium Center.

77.     At all relevant times, J. Leifer has had the power to transfer the assets and/or

---

[1] *See* State of New York Public Health and Health Planning Counsel, April 6, 2017, at page 9 (*available at* https://www.health.ny.gov/facilities/public_health_and_health_planning_council/meetings/2017-04-06/docs/eprc_agenda.pdf) (last accessed Aug. 30, 2017).

liabilities of Atrium Center, as exemplified in his signifying of the aforementioned mortgage.

78.     At all relevant times, J. Leifer has had the power the declare bankruptcy on behalf of Atrium Center.

79.     At all relevant times, J. Leifer has had the power to enter into contracts on behalf of Atrium Center, as exemplified in his signifying of the aforementioned mortgage.

80.     At all relevant times, J. Leifer has had the power to close, shut down, and/or sell Atrium Center.

81.     J. Leifer is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff and similarly situated employees.

## JURISDICTION AND VENUE

82.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

83.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

84.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

85.     Plaintiff brings the First Cause of Action, an FLSA claim, on behalf of himself and all similarly situated persons who work or have worked as LPNs for Atrium Center who elect to opt-in to this action (the "FLSA Collective").

86.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate

Plaintiff and the FLSA Collective.

87.     Consistent with Defendants' policies and patterns or practices, Plaintiff and the FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay for all hours worked beyond 40 per workweek.

88.     All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

89.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, proper premium overtime wages for all hours worked in excess of 40 hours per workweek.

## CLASS ACTION ALLEGATIONS

90.     Plaintiff brings the Second, Third, Fourth, and Fifth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as LPNs for Atrium Center in New York between August 31, 2011 and the date of final judgment in this matter (the "Rule 23 Class").

91.     The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

92.     There are more than fifty Rule 23 Class Members.

93.     Plaintiff's claims are typical of those claims that could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule

23 Class Member in separate actions.

94.     Plaintiff and the Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class Members.

95.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class Members and has no interests antagonistic to the Rule 23 Class Members.

96.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented many plaintiffs and classes in wage and hour cases.

97.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

98.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class Members individually and include, but are not limited to, the following:

> (a) whether Defendants failed to compensate Plaintiff and the Rule 23 Class for all hours worked at their regular rate(s) of pay;
>
> (b) whether Defendants failed to compensated Plaintiff and the

Rule 23 Class for hours worked in excess of 40 per workweek;

(c) whether Defendants applied unlawful deductions onto wages earned by Plaintiff and the Rule 23 Class;

(d) whether Defendants failed to furnish Plaintiff and the Rule 23 Class with accurate statements with every payment of wages, as required by the NYLL;

(e) the nature and extent of class-wide injury and the measure of damages for those injuries.

## PLAINTIFF'S FACTUAL ALLEGATIONS

99.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Lennox Freeman**

100.     Freeman was employed by Defendants as a LPN from approximately 2004 through March 2016.  During his employment, Freeman performed work at Atrium Center.

101.     At all times relevant, Defendant paid Plaintiff on an hourly basis.

102.     At all times relevant, Plaintiff has been a non-exempt employee under the FLSA and NYLL.

103.     During his employment, Freeman generally worked over 40 hours per week, unless he missed time for vacation, sick days or holidays. On average, he generally was assigned to the evening shift, scheduled from 4:00 pm to 12:00 am, 5 days per week.

104.     Despite the evening shift's scheduled end time of 12:00 am, Plaintiff was regularly required to stay past 12:00 am to finish his job duties for that day.  On average, Plaintiff regularly stayed between 1 to 1.5 hours past this scheduled end time.  Plaintiff recalls at times having to stay at work 3 to 3.5 hours past his scheduled end times on several occasions, not leaving until between 3:00 am to 3:30 am.  When Plaintiff would stay past his scheduled shift

time, he did so in full view of his managers and with the knowledge and consent of Defendants.

105.   In addition, Defendants automatically deducted one hour time each day that Plaintiff was assigned to work, notwithstanding the fact that Plaintiff regularly did not take this break time.  When Plaintiff did not take this break time, he did so in full view of his managers and with the knowledge and consent of Defendants.

106.   Despite regularly working over 40 hours per workweek, Defendants failed to compensate Freeman with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work.

107.   Defendants did not compensate Plaintiff for time he spent working through automatically deducted breaktime.

108.   Throughout his employment, Freeman received weekly pay stubs from Defendants that did not properly record and/or compensate him for all of the hours that he worked.

109.   Throughout his employment, Defendants applied deductions from Freeman's wages that were not in accordance with the provisions of any law, rule or regulation, and that were not expressly authorized by Freeman nor made for his benefit.

110.   In this regard, Defendants consistently applied transportation deductions, uniform deductions, and other deductions notated as: "AMT LNGVITY," "NR," "TR," "UF N," and "LNGVITT."

111.   Defendants failed to provide Freeman with accurate wage statements as required by the NYLL.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

112.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

113.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

114.     Plaintiff and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

115.     Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek.

116.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Agreed Upon Wages**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

117.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

118.     The wage provisions of Article 6 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the Rule 23 Class.

119.     Pursuant to NYLL, Article 6 § 191(1)(d), Defendants are required to pay Plaintiff

and the Rule 23 Class the wages they have earned in accordance with the agreed terms of their employment, but not less frequently than semi-monthly, on regular pay days designated in advance by Defendants.

120.    Defendants have failed to pay Plaintiff and the Rule 23 Class the earned wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations, pursuant to the agreed-upon terms of Plaintiff's employment.

121.    Upon information and belief, Defendants automatically deducted one hour from each shift for a purported break time.  However, Plaintiff and Rule 23 Class regularly did not take any time or up to this time as break time.

122.    Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their agreed-upon earned wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

123.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

124.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the Rule 23 Class.

125.    Defendants failed to pay Plaintiff and the Rule 23 Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

126.     Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### New York Labor Law – Unlawful Deductions
### (Brought on Behalf of Plaintiff and the Rule 23 Class)

127.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

128.     Defendants made unlawful deductions from the wages of Plaintiff and the Rule 23 Class.

129.     The deductions made from the wages of Plaintiff and the Rule 23 Class were not expressly authorized in writing by Plaintiff and the Rule 23 Class, and were not for the benefit of Plaintiff and the Rule 23 Class.

130.     Defendants' unlawful deductions include, but are not limited to: transportation deductions, uniform deductions, and other deductions notated as: "AMT LNGVITY," "NR," "TR," "UF N," and "LNGVITT."

131.      By Defendants' knowing or intentional effort to make deductions from the wages of Plaintiff and the Rule 23 Class, Defendants have violated NYLL Article 6, § 193.

132.     Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid wages, liquidated damages, as provided by NYLL Article 6 § 198, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

133.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

134.    Defendants failed to supply Plaintiff and the Rule 23 Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing:  dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

135.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the Rule 23 Class are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all LPNs who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Atrium Center.  Such notice

shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.       Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.       Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.       Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.       Unpaid overtime wages, unlawful deductions of wages, liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.       Statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide Plaintiff and the Rule 23 Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

G.       Prejudgment and post-judgment interest;

H.       Reasonable attorneys' fees and costs of the action; and

I.       Such other relief as this Court shall deem just and proper.

Dated:  New York, New York
        August 31, 2017

Respectfully submitted,

/s/ Brian S. Schaffer
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and the Putative Class*

<u>FAIR LABOR STANDARDS ACT CONSENT</u>

      1.     I consent to be a party plaintiff in a lawsuit against RIVER MANOR CARE CENTER, INC. and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

      2.     By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

x _____
Signature

x _____
Full Legal Name (Print)