17-CV-05162 (RJD)(RER)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LENNOX FREEMAN, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

RIVER MANOR CORP. d/b/a ATRIUM CENTER FOR REHABILITATION AND NURSING; RIVER MANOR CARE CENTER, INC.; EXCELSIOR CARE GROUP, LLC; RIVER MANOR ACQUISITION I, LLC; RIVER MANOR ACQUISITION II, LLC; CONSTANCE LEIFER, individually; and JOEL LEIFER, individually,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**
Attorneys for the Defendants
190 Willis Avenue
Mineola, N.Y. 11501
(516) 747-0300

Christopher P. Hampton, Esq.
Larry R. Martinez, Esq.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT I

      PLAINTIFF'S PREEMPTED CLAIMS MUST BE DISMISSED
      PURSUANT TO FRCP 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A. Standard on a Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B. Plaintiff's FLSA Overtime Claim, NYLL Overtime Claim,
          and NYLL "Agreed Upon Wages" Claim Require Interpretation
          of the Atrium LPN CBA, and thus Are Preempted by Section 301
          of the LMRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . , . . . . . . . . . . . 4

        C. Plaintiff's FLSA Overtime Claim and NYLL Overtime Claim
          are Preempted by the LMRA and/or the NLRA due to the Atrium
          LPN CBA's Clear and Unmistakable Waiver Found within its
          Grievance Procedure Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT II

      THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL
      JURISDICTION OVER PLAINTIFF'S CLAIMS BROUGHT
      PURSUANT TO THE NYLL, AND INSTEAD SHOULD
      DISMISS THEM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                                **<u>Pages</u>**

<u>**Federal Cases**</u>

<u>Adickes v. S.H. Kress & Co.</u>,
   398 U.S. 144 (1970).................................................................................................. 3

<u>Alderman v. 21 Club Inc.</u>,
   733 F.Supp.2d 461 (S.D.N.Y. 2010)........................................................................ 13

<u>Anderson v. Liberty Lobby, Inc.</u>,
   477 U.S. 242 (1986).................................................................................................. 4

<u>Avet Coach Corp. v. Milk Drivers & Dairy Employees Local 584, Intern. Brotherhood of
Teamsters, Welfare Fund</u>,
   No. 77-CV-1575(DJP), 1978 WL 1575 (S.D.N.Y. Jan. 3, 1978) ........................ 12, 17

<u>Chen v. Major League Baseball</u>,
   6 F.Supp.3d 449 (S.D.N.Y. 2014) ........................................................................... 18

<u>Conzo v. City of New York</u>,
   438 F.Supp.2d 432 (S.D.N.Y. 2006)........................................................................ 17

<u>DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.</u>,
   27 F.Supp.3d 313 (E.D.N.Y. 2014) ......................................................................... 18

<u>Elswick v. Daniels Electric, Inc.</u>,
   787 F.Supp.2d 443 (S.D.W.Va. 2011)........................................................................ 9

<u>Hamerslough v. Hipple</u>,
   No. 10-CV-3056(NRB), 2010 WL 4537020 (S.D.N.Y. Nov. 4, 2010)............................. 14, 17

<u>Hinterberger v. Catholic Health</u>,
   No. 08-CV-380S, 2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008)............................................ 8

<u>Hoops v. Keyspan Energy</u>,
   822 F.Supp.2d 301 (E.D.N.Y. 2011) ................................................................. passim

<u>Ibarra v. United Parcel Serv.</u>,
   695 F.3d 354 (5th Cir. 2012) ................................................................................... 16

<u>Isaacs v. Central Parking Systems of New York</u>,
   No. 10-CV-5636(ENV)(LB), 2012 WL 957494 (E.D.N.Y. Feb. 27, 2012)..................10

<u>Johnson v. D.M. Rothman Co., Inc.</u>,
   861 F.Supp.2d 326 (S.D.N.Y. 2012)..................................................................9, 10

826897-3

Lawrence v. Sol G. Atlas Realty Co., Inc.,
   841 F.3d 81 (2d Cir. 2016)..................................................................... 16

Levy v. Verizon Information Servs., Inc.,
   498 F.Supp.2d 586 (E.D.N.Y. 2007) ................................................. 4, 8

Lundy v. Catholic Hlth. Sys. of Long Island, Inc.,
   711 F.3d 106, 118 (2d Cir. 2013)........................................................ 18

Major League Baseball Props., Inc. v. Salvino, Inc.,
   542 F.3d 290 (2d Cir. 2008)................................................................... 3

McLean v. Garage Management Corp. et al.,
   No. 10-CV-3950(DLC), 2011 WL 1143003 (S.D.N.Y. March 29, 2011)...................11, 12

Mic-Ron Gen. Contractors, Inc. v. Trustees of New York City Dist. Council of Carpenters Ben.
Funds,
   908 F.Supp. 208 (S.D.N.Y. 1995)................................................... 12, 17

Nakahata v. New York-Presbyterian Healthcare System, Inc.,
   No. 10-CV-2661(PAC),  2011  WL  321186  (S.D.N.Y. Jan. 28, 2011), reversed on other
   grounds, 723 F.3d 192 (2d Cir. 2016) ................................................... 8

Polanco v. Brookdale Hosp. Medical Center,
   819 F.Supp.2d 129 (E.D.N.Y. 2011) ................................................... 11

Rogers v. N.Y. Univ.,
   220 F.3d 73 (2d Cir. 2000)................................................................... 16

Ruiz v. Citibank, N.A.,
   93 F.Supp.3d 279 (S.D.N.Y. 2015)...................................................... 18

Severin v. Project OHR, Inc.,
   No. 10-CV-9696(DLC), 2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011) ................................... 11

Spinelli v. City of N.Y.,
   579 F.3d 160 (2d Cir. 2009)................................................................... 3

Tand v. Solomon Schechter Day School of Nassau County,
   324 F.Supp.2d 379 (E.D.N.Y. 2004) ...................................................... 4

Vadino v. A. Valey Engineers,
   903 F.2d 253, 264 (3d Cir. 1990)............................................................ 9

Volpe v. Am. Language Commc'n Ctr., Inc.,
   200 F.Supp.3d 428 (S.D.N.Y. 2016)...................................................... 18

Zalaski v. City of Bridgeport Police Dep't,
   613 F.3d 336 (2d Cir. 2010)................................................................... 3

-iii-

**State Cases**

Suffolk Cnty. Water Auth. v. Village of Greenport,
   21 A.D.3d 947 (2d Dep't 2005)..................................................................... 5

**Federal Statutes**

28 U.S.C. § 1367............................................................................................... 18

29 U.S.C. § 185................................................................................................. 4

29 U.S.C. § 254................................................................................................. 5

**Federal Rules**

FED. R. CIV. PRO. 56 ........................................................................................ 3

826897-3

## PRELIMINARY STATEMENT

Former Licensed Practical Nurse ("LPN") Lennox Freeman ("Plaintiff") brings this action on behalf of himself and others purportedly similarly situated against defendants River Manor Corp. d/b/a Atrium Center for Rehabilitation and Nursing; River Manor Care Center, Inc.; Excelsior Care Group, LLC; River Manor Acquisition I, LLC; River Manor Acquisition II, LLC; Constance Leifer; and Joel Leifer (collectively, "Defendants").   Plaintiff seeks payment of overtime wages pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and brings additional claims pursuant to the NYLL alleging, inter alia, failure to pay "agreed upon wages."   In connection with same, Plaintiff seeks to certify a conditional collective action pursuant to the FLSA, 29 U.S.C. § 216(b), for purported failure to pay overtime, and seeks to certify a class action under Federal Rule of Civil Procedure ("FRCP") 23 for the noted purported overtime and other violations under the NYLL.

However, prior to Plaintiff being allowed to litigate his claims on an individual basis, let alone on the collective/class-action bases sought, there exists a predicate threshold issue as to whether Plaintiff's overtime claims (pursuant to the FLSA and/or NYLL) and Plaintiff's NYLL "agreed upon wages" claim (collectively, the "Preempted Claims") are preempted pursuant to Section 301 of the Labor Management Relations Act (the "LMRA") and/or the National Labor Relations Act (the "NLRA").   In this regard, certain preliminary facts are not in dispute.   First, there is no dispute that, during all times relevant to this matter, Plaintiff's work as an LPN for defendant River Manor Corp. d/b/a Atrium Center for Rehabilitation and Nursing ("Atrium") was performed pursuant to the terms of a collective bargaining agreement (a "CBA").[1]   Second,

---

[1] See the CBA by and between 1199 SEIU United Healthcare Workers East ("1199") and Greater New York Health Care Facilities Association, Inc., dated June 30, 2009 – September 30, 2014 (Licensed Practical Nurses Unit) and the Greater New York 2014-2017 Memorandum of Understanding (collectively, the "Atrium LPN CBA"), a copy of

there is no dispute this CBA specifically provides that overtime is owed only for "services" which are "specifically authorized" by Atrium. Third, there is no dispute the Atrium LPN CBA contains a grievance procedure provision which specifically is applicable to "overtime" claims and which specifically notes failure to abide by its procedural requirements constitutes waiver of the right to proceed with the arbitration as provided for in the grievance procedure. Finally, there is no dispute Plaintiff failed to comply with the terms of the Atrium LPN CBA's grievance procedure provisions prior to bringing the instant action.

As such, in light of these undisputed facts, the Preempted Claims are preempted pursuant to Section 301 of the LMRA, and/or the NLRA, because: (1) adjudication of Plaintiff's alleged right to recover in connection with the Preempted Claims requires interpretation of the Atrium LPN CBA's terms; and/or (2) the Preempted Claims have been preempted by the clear and explicit waiver concerning overtime claims contained within the Atrium LPN CBA's Grievance Procedure provisions.

Specifically, Plaintiff's Preempted Claims require this Court to interpret the Atrium LPN CBA's provisions in order to determine whether Plaintiff performed "services" covered by the CBA; whether Atrium "specifically authorized" those services sufficient to make overtime "payable" to Plaintiff; and/or whether Plaintiff received certain minimum wage payments, longevity payments and/or wage-differential payments as "agreed upon" pursuant to the Atrium LPN CBA's terms. Additionally or alternatively, the Atrium LPN CBA contains a grievance procedure which specifically provides that disputes concerning overtime are subject to its terms, and such specific inclusion acts as a clear and explicit waiver to any overtime claims alleged herein. Finally, as Plaintiff only has one predicate federal claim – the FLSA overtime claim – to

---

which has been annexed to the Declaration of Christopher P. Hampton, Esq., dated February 15, 2018 ("Hampton Decl.") at Exhibit 3.

the extent such claim is preempted as a matter of course, this Court should dismiss any remaining NYLL claims, because exercise of supplemental jurisdiction over state-law claims where there is no predicate federal claim is an improvident use of judicial resources.

## STATEMENT OF FACTS[2]

The Court is respectfully referred to Defendants' Local Civil Rule 56.1 Statement of Undisputed Material Facts dated February 15, 2018.[3]

## ARGUMENT

## POINT I

## PLAINTIFFS' PREEMPTED CLAIMS MUST BE DISMISSED PURSUANT TO FRCP 56

A. **Standard on a Motion for Summary Judgment**

Pursuant to FRCP 56, a court "shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a).  In this regard, the party seeking summary judgment must establish that no genuine dispute as to any material fact exists. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).  Once this burden is met, the burden shifts to the nonmoving party to put forward evidence establishing the existence of a question of fact that must be resolved at trial.  Spinelli v. City of N.Y., 579 F.3d 160, 166-67 (2d Cir. 2009).  In determining whether a genuine issue of fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). A court also construes any disputed facts in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144,

---

[2] Nothing herein shall be considered an admittance of the facts as alleged in the Complaint, and Defendants reserve their right to deny and/or dispute any and/or all of the allegations contained within the Complaint.

[3] Unless otherwise indicated, all Exhibits are annexed to the Hampton Decl.

157-59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

As to the instant matter, there is no dispute Plaintiff was subject to the Atrium LPN CBA, and there is no dispute Plaintiff did not comply with the Atrium LPN CBA's grievance procedure. As such, there are no disputed material facts, and thus determination of Defendants' right to dismissal of Plaintiff's claims as preempted by the LMRA and/or the NLRA is ripe for determination at this time. See Levy v. Verizon Information Servs., Inc., 498 F.Supp.2d 586, 595 (E.D.N.Y. 2007) (holding that defendant's argument concerning preemption of wage claims "would be ripe for summary judgment [in that] there [were] no disputed facts concerning the authenticity of the CBAs . . . or plaintiffs' union membership. In other words there [were] pure issues of law before the court").

**B.     Plaintiff's FLSA Overtime Claim, NYLL Overtime Claim, and NYLL "Agreed Upon Wages" Claim Require Interpretation of the Atrium LPN CBA, and thus Are Preempted by Section 301 of the LMRA.**

It is well settled "Section 301 of the LMRA, among other things, governs actions by an employee against an employer for breach of a collective bargaining agreement." Tand v. Solomon Schechter Day School of Nassau County, 324 F.Supp.2d 379, 383 (E.D.N.Y. 2004) (citation omitted); see also 29 U.S.C. § 185. Indeed, courts consistently hold "[s]uits arising under section 301 include those seeking to vindicate uniquely personal rights of employees such as wages, hours, overtime pay, and wrongful discharge . . . Thus, Section 301 preempts . . . claims in any case involving the interpretation of rights and responsibilities under a CBA, regardless of whether the plaintiff's claims sound in tort or contract." Tand, 324 F.Supp.2d at 383 (emphasis added) (citation and internal quotations omitted).

Here, Plaintiff's Preempted Claims require interpretation of rights and responsibilities under the Atrium LPN CBA, meaning they are preempted. In this regard, Plaintiff's FLSA and NYLL overtime claims are predicated upon two theories: (i) Defendants purportedly did not compensate Plaintiff for "post-liminary" work done past the end of his shift[4]; and (ii) Defendants allegedly automatically deducted one hour of break time from Plaintiff, but there were times he purportedly worked through such breaks. See Ex. 1, Plaintiff's Complaint dated August 31, 2017 ("Compl.") at ¶¶ 6-7, 104-05, 107, 115, 125. Additionally, Plaintiff's "agreed upon wages" claim is also predicated on the similar allegation that Defendants purportedly failed to pay Plaintiff (and other similarly-situated LPNs) all wages ostensibly "agreed upon," in that Defendants did not pay Plaintiff (and other LPNs) compensation ostensibly owed for the breaks through which such LPNs allegedly worked. See id. at ¶¶ 7, 105, 121.

Each of these claims specifically requires interpretation of the Atrium LPN CBA. Indeed, that CBA contains provisions setting pay rates, schedules, the amount and number of breaks, and application of a wage-shift differential. See Ex. 3, Atrium LPN CBA at Sections 10, 12-14, p. 10, 14-16. Most pertinently, the Atrium LPN CBA specifically provides for payment of overtime, but explicitly notes in connection with same that "[n]o overtime shall be payable except for services specifically authorized by the Employer." See id. at Section 10, p. 10. There is no exception and/or limitation to this overtime provision, and thus it is applicable to all claims Plaintiff may have concerning receipt of overtime. See Suffolk Cnty. Water Auth. v. Village of Greenport, 21 A.D.3d 947 (2d Dep't 2005) (finding that a contract should be interpreted "consistent with [its] plain meaning" and noting "basic principles of contract construction [require a finding] that an interpretation which renders language in the contract superfluous is

---

[4] It must be noted the FLSA generally does not provide for entitlement to pay for "post-liminary" work. See 29 U.S.C. § 254(a)(2).

unsupportable") (citation omitted). As such, in order to determine whether Plaintiff is entitled to receipt of any overtime compensation whatsoever, this Court must first interpret the relevant provisions of the Atrium LPN CBA concerning Plaintiff's entitlement to overtime as contained within said CBA.

Indeed, this Court first would have to determine whether the "services" which Plaintiff performed were sufficiently covered by the Atrium LPN CBA. This would require the Court to make specific inquiries as to the actual services performed by Plaintiff, and then analyze whether such services were services 1199 (Plaintiff's Union) intended be covered by the Atrium LPN CBA. In other words, the Court would need to analyze whether Plaintiff was performing medical services befitting an LPN, or whether he was performing ministerial duties which could have been performed by support staff.[5]

Following this, this Court would then have to determine whether Atrium "specifically authorized" Plaintiff to perform such services. It must be noted that, pursuant to the Atrium LPN CBA, Atrium had and has the absolute right to make reasonable working rules and regulations of procedure and conduct consistent with the CBA's terms. See Ex. 3, Atrium LPN CBA Section 39, p. 38. In light of this right, determining whether Plaintiff was entitled to receipt of overtime would require the Court analyze and interpret several provisions of the Atrium LPN CBA. First the Court would need to determine whether Atrium had enacted working rules and regulations concerning how any overtime "services" could be "specifically authorized" for employees covered by the CBA (such as Plaintiff), and whether such rules and regulations were permissible

---

[5] As is detailed below, this is precisely the reason the Atrium LPN CBA provides for a grievance and arbitration provision – so that any determination concerning whether the "services" Plaintiff was performing were "covered" by the CBA and/or "specifically authorized" by Atrium can be made by individuals with intimate knowledge of the work done by 1199 LPN's and/or how other employers covered by the Atrium LPN CBA previously have "specifically authorized" overtime "services," such as Impartial Chairman Martin F. Scheinman, members of 1199, and/or Atrium personnel. See Section I(C), infra.

826897-3

-6-

as consistent with the terms of the CBA. In other words, what did Atrium require prior to "specifically authorizing" certain services for overtime, and were such requirements allowed under the CBA? Next, the Court would need to determine whether Plaintiff properly followed these rules and regulations such that the overtime he purportedly performed should be compensable under the terms of the CBA. In other words, did Plaintiff actually perform "services" which were "specifically authorized by the Employer [Atrium]"?

Further, in order to determine whether Plaintiff was paid all "agreed upon wages" as required by the NYLL, the Court would need to determine exactly what wages were "agreed upon" for Plaintiff, as evidenced by the CBA's explicit terms. Specifically, the Court would need to analyze the Atrium LPN CBA's terms (*i.e.* the CBA's minimum wage provisions, longevity pay provisions, and/or wage differential provisions) to establish whether any additional "agreed upon" wages should have been paid to Plaintiff, but were not. See id. at Sections 12-14, p. 14-16. In this regard, the Court would need to interpret said minimum wage provisions, longevity pay provisions, and/or wage differential provisions and analyze whether and to what extent such provisions applied to Plaintiff. See id. The Court also would need to analyze whether the "services" Plaintiff allegedly performed during his breaks consisted of work covered by the Atrium LPN CBA sufficient to require Plaintiff be compensated at the "agreed upon wages" therein in any event. It is only following this analysis and interpretation of relevant provisions that this Court could determine whether Defendants violated the NYLL by purportedly failing to pay Plaintiff (and/or other similarly situated LPNs) any of the Atrium LPN CBA's "agreed upon wages."

Finally, to the extent this Court were to determine Plaintiff was entitled to overtime or other "agreed upon" compensation under the terms of the Atrium LPN CBA, the Court would

need to perform the additional inquiry of interpreting the CBA's terms concerning wage provisions, longevity pay provisions, and/or wage differential provisions in order to assess the amount and/or rate of any such compensation ostensibly owing to Plaintiff. In sum, in order to establish Plaintiff's right to recover for any of the Preempted Claims, this Court would be required to: (i) interpret the Atrium LPN CBA's noted provisions: (ii) analyze them as against the schedule Plaintiff claims he was set, the hours Plaintiff claims he worked, and the services Plaintiff claims he performed; and (iii) determine whether such schedules, work, and "services" were covered by the CBA, and/or were "specifically authorized" by Atrium, as required by the terms of the CBA.

Thus the Preempted Claims are preempted by Section 301 of the LMRA, and/or the NLRA. See, e.g., Hoops v. Keyspan Energy, 822 F.Supp.2d 301 (E.D.N.Y. 2011) (finding FLSA claim preempted as determination of wages owed required interpretation of wage language in CBA, particularly the right to receive wage shift differentials); Levy, 498 F.Supp.2d at 586 (finding wage deduction claims as preempted because determination of whether such deductions were permitted under the CBA would require interpretation of said CBA); Hinterberger v. Catholic Health, No. 08-CV-380S, 2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008) (finding claims of failure to pay for "post-liminary" work preempted by the CBA); Nakahata v. New York-Presbyterian Healthcare System, Inc., No. 10-CV-2661(PAC), 2011 WL 321186, *4 (S.D.N.Y. Jan. 28, 2011), reversed on other grounds, 723 F.3d 192 (2d Cir. 2016) ("[The nature of the work allegedly done; the circumstances of training; or when, where and how the uncompensated hours of work . . . all . . . are necessary to determine whether they are compensable or require interpretation of the collective bargaining agreement. If any of the alleged violations hinges on the collective bargaining agreements' definition of the terms of

employment, they must be brought under the LMRA and in accordance with the agreement's grievance and arbitration provision.").[6]

Indeed, there are two cases which directly concern issues such as the ones elucidated above, and are thus illustrative.  In Hoops v. Keyspan Energy, plaintiff sought to recover unpaid overtime under the FLSA and defendant moved to dismiss plaintiff's claim as preempted by the LMRA.  822 F.Supp.2d at 302.  The court granted defendant's motion, noting that:

> [B]efore the Court can reach the issue of whether the [p]laintiff is entitled to unpaid overtime compensation, the Court must first determine whether he was entitled to receive night shift differentials in his straight-time wage rate. . . [B]ecause the [p]laintiff's entitlement to unpaid overtime under the FLSA hinges on his contractual right to receive night shift differential in his straight-time wage rate, the Court cannot adjudicate the statutory claim without a ruling on the contract claim.  It is a threshold question that must be determined pursuant to the CBA dispute resolution procedures.

Id. at 307.

Similarly, in Johnson v. D.M. Rothman Co., Inc., plaintiffs sought to recover unpaid overtime wages pursuant to the FLSA and NYLL against defendant, and defendant moved for summary judgment on the theory that such claims were preempted by Section 301 of the LMRA.  861 F.Supp.2d 326, 328 (S.D.N.Y. 2012).  The court granted defendant's motion, finding plaintiffs' claims were contingent upon interpretation of a CBA which covered plaintiffs' employment.  Id. at 332-33.  In so finding, the court noted:

> While the boundary between claims requiring interpretation of a CBA . . . is elusive, determining [p]laintiffs' entitlement to the grandfather and hi-lo differentials requires more than simple reference to the face of the CBA. . . To determine whether the [p]laintiffs were entitled to grandfather and hi-lo pay

---

[6] See also Vadino v. A. Valey Engineers, 903 F.2d 253, 264 (3d Cir. 1990) ("[Plaintiff's] FLSA claim is, in essence, a 'repackaged' section 301 claim which cannot be maintained under the FLSA because it is dependent upon [Plaintiff's] unproven contention that he was entitled to [a certain pay rate] under the collective bargaining agreement."); Elswick v. Daniels Electric, Inc., 787 F.Supp.2d 443 (S.D.W.Va. 2011) (dismissing plaintiff's FLSA claims where the court found that the plaintiff "is entitled to additional overtime pay only if a fact finder determines that defendant improperly classified him as a laborer rather than a lineman and paid him overtime wages based on the laborer's rate", and found that the LMRA prevented the court from adjudicating the threshold issue of the plaintiff's proper classification).

> [sufficient to entitle them to receipt of additional overtime compensation], the Court would have to evaluate [p]laintiffs' work histories in light of the intended meaning and purpose of the CBA's terms, a task which the Court is ill-equipped to perform, and which the LMRA mandates should be left to the CBA's grievance procedures. Thus . . . the Court cannot address [p]laintiffs' grandfather and hi-lo claims without digging into forbidden ground.

Id. at 333 (internal quotations and citations omitted).

This is exactly the type of inquiry that needs to be undertaken here. Before this Court can determine whether Plaintiff is entitled to unpaid overtime compensation, it first must determine whether he was performing "services" covered by the Atrium LPN CBA, and to the extent he was, whether such services were "specifically authorized" by Atrium. As such, the Court would necessarily be required to evaluate Plaintiff's work history in light of the intended meaning of Section 10(C) of the Atrium LPN CBA to establish whether Plaintiff ever performed "services" that were "specifically authorized" by Atrium sufficient to entitle him to receipt of any overtime. Further, to the extent such entitlement were established, the Court would need to determine Plaintiff's entitlement to longevity pay and/or wage-shift differential pay in order to determine whether and to what extent such payments affected Plaintiff's "rate of pay" for purposes of determining overtime compensation owed and/or the amount of "agreed upon" wages owed, if any. In light of this, Plaintiff's claims should be dismissed.

It is anticipated Plaintiff will attempt to introduce certain cases which he will argue support the contrary conclusion that the Preempted Claims should not be dismissed as preempted. However, it must be noted such anticipated cases are inapposite to the instant matter. For instance, the plaintiff in Isaacs v. Central Parking Systems of New York sought payment of minimum wages, an independent right which was not referenced in the relevant CBA. See No. 10-CV-5636(ENV)(LB), 2012 WL 957494 (E.D.N.Y. Feb. 27, 2012). This is in contrast to this matter, where Plaintiff seeks payment of overtime wages, as specifically referenced in the

Atrium LPN CBA.  Further, as to <u>Polanco v. Brookdale Hosp. Medical Center</u>, the relevant CBA therein only referenced hours "worked," and thus there was no interpretation necessary to determining whether or not the plaintiff therein "worked" the hours for which compensation was sought.   <u>See</u> 819 F.Supp.2d 129 (E.D.N.Y. 2011).   Conversely, the CBA in this matter specifically mentions two requirements – Plaintiff must perform "services," and those "services" must be "specifically authorized," before <u>any</u> overtime is to be deemed "payable."   As such, there is interpretation necessary to determine whether the duties Plaintiff purportedly performed were "services" covered by the Atrium LPN CBA, and whether Atrium had "specifically authorized" said services sufficient to owe overtime compensation for same.

Next, the <u>Severin v. Project OHR, Inc.</u> matter primarily concerned whether plaintiffs' claims therein should be compelled to be arbitrated, and did not focus on whether plaintiffs' claims were preempted as requiring interpretation of the CBA. <u>See</u> No. 10-CV-9696(DLC), 2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011). To the extent <u>Severin</u> did concern interpretation, the plaintiffs therein argued they were paid as contractually required by the CBA, but simply that such compliance did not satisfy the FLSA. Here, in contrast, in order to establish that Plaintiff violated the FLSA/NYLL concerning payment of overtime and/or "agreed upon" wages, Plaintiff would first have to establish that Defendants violated the contractual provisions of the Atrium LPN CBA concerning payment of overtime for "services" which were "specifically authorized" by the employer, and/or concerning the amount of wages which were actually "agreed upon" as provided for by the terms of the Atrium LPN CBA.  Finally, with regard to <u>McLean v. Garage Management Corp. et al.</u>, that matter simply held "mere referral" to an explicitly owed wage-rate was insufficient to require "interpretation" of the CBA. <u>See</u> No. 10-CV-3950(DLC), 2011 WL 1143003 (S.D.N.Y. March 29, 2011).  Notwithstanding this, the <u>McLean</u> court noted that

plaintiff's claims therein could have been preempted to the extent the court would have been required to interpret whether defendants complied with the CBA's required methods of payment; however, since such interpretation was unnecessary, such preemption did not occur. See id. In contrast here, the Court must determine, as a threshold issue, whether Plaintiff performed "services specifically authorized by [Atrium]," and whether Plaintiff was entitled to certain wages, longevity pay, and/or wage-shift differentials, prior to finding a violation of the FLSA and/or NYLL.

Thus, given the need to make the above interpretations in connection with the instant matter, and the inapplicability of Plaintiff's anticipated response, Plaintiff's Preempted Claims should be dismissed.

**C.    Plaintiff's FLSA Overtime Claim and NYLL Overtime Claim are Preempted by the LMRA and/or the NLRA due to the Atrium LPN CBA's Clear and Unmistakable Waiver Found within its Grievance Procedure Provisions**

It is axiomatic that arbitration provisions and proceedings, as collectively-bargained for and detailed in a CBA, are to be afforded substantial deference. See, e.g., Avet Coach Corp. v. Milk Drivers & Dairy Employees Local 584, Intern. Brotherhood of Teamsters, Welfare Fund, No. 77-CV-1575(DJP), 1978 WL 1575 (S.D.N.Y. Jan. 3, 1978) (supporting the statement that "national labor policy establishes a presumption of arbitrability"); Mic-Ron Gen. Contractors, Inc. v. Trustees of New York City Dist. Council of Carpenters Ben. Funds, 908 F.Supp. 208 (S.D.N.Y. 1995) ("Such a presumption of arbitrability furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining."). In light of this deference, courts routinely hold that claims arising out of the FLSA and/or NYLL can be preempted (by the LMRA and/or the NLRA) insofar as any CBA relevant to such claims contains grievance and/or arbitration provisions

which act as a "clear and unmistakable waiver" for such claims. See Alderman v. 21 Club Inc., 733 F.Supp.2d 461 (S.D.N.Y. 2010). A "clear and unmistakable waiver" arises when either: (i) the grievance/arbitration provision specifically provides the employee agrees to arbitrate employment claims; and/or (ii) the grievance/arbitration provision specifically references or incorporates a statute such as the FLSA into the agreement to arbitrate. See id.

This is exactly what has occurred here. The Atrium LPN CBA contains a mandatory grievance procedure which covers all complaints, disputes, controversies and/or grievances arising in connection with the Atrium LPN CBA. See Ex. 3, Atrium LPN CBA, Section 9, p. 7. Pertinently, this procedure specifically provides "Grievances arising from overtime claims . . . shall be presented within fifteen (15) months after the claim arose." Id. The relevant grievance procedure further provides "[f]ailure to give such notice within the time set forth herein shall be deemed a waiver of the right to submit the grievance to arbitration as hereinafter set forth." Id.[7] Finally, the CBA's grievance procedure specifically appoints Martin F. Scheinman to continue in his designated role as arbitrator/"Impartial Chairman" for all disputes as between LPN's (i.e. Plaintiff) and employers (i.e. Atrium) covered by the CBA. See id.

Employers covered by the Atrium LPN CBA, in conjunction with Plaintiff's (former) union 1199, have collectively bargained for and enacted the foregoing arbitration procedure, and appointed Mr. Scheinman in connection therewith, specifically because they (1199, Atrium and other employers, and Mr. Scheinman) have years of experience with determining, and intimate and applicable knowledge concerning, what "services" are covered by the instant CBA, and/or exactly how employers may "specifically authorize" said services sufficient to make any

---

[7] Cf. Alderman, 733 F.Supp.2d at 470. We note the Alderman court found its relevant CBA language to be insufficiently "clear and explicit" in that their grievance procedure simply provided that "all disputes concerning [the CBA]" were to be arbitrated. This is in stark contrast to the Atrium LPN CBA, which explicitly provides that matters "arising from overtime claims" must be grieved, or waived.

overtime "payable." See, e.g., id.; Ex. 2, Declaration of Karen Castronovo dated February 15, 2018 ("Castronovo Decl."), at ¶ 22.  Thus, given this experience and knowledge, these parties rightfully believe they are the entities most capable of making determinations concerning disputes arising under the Atrium LPN CBA, including disputes relating to purported payment of overtime, vis-à-vis the mandatory grievance and arbitration procedure explicit within the CBA. See Castronovo Decl., at ¶ 22.

Importantly, there is no dispute Plaintiff failed to comply with the terms of the Atrium LPN CBA's grievance procedure provisions.  See id. at ¶¶ 17-19.  As such, this Court should find that, given the Atrium LPN CBA's "clear and explicit" waiver concerning claims of overtime as contained within its grievance procedure provisions, and Plaintiff's failure to comply with said provisions, Plaintiff's overtime claims pursuant to the FLSA and/or the NYLL must be dismissed as preempted.  See, e.g., Ex. 3, Atrium LPN CBA, Section 9; Hamerslough v. Hipple, No. 10-CV-3056(NRB), 2010 WL 4537020 (S.D.N.Y. Nov. 4, 2010) (noting there was no dispute that an arbitration clause referencing the requirement that "any disputes concerning commission payments" was enforceable even though it concerned rights purportedly guaranteed by statute.).

In this regard, Hoops v. Keyspan again is instructive.  Along with finding plaintiff's FLSA overtime claim therein was preempted, Judge Spatt also determined that plaintiff therein was required to arbitrate said claim pursuant to the CBA's terms; since plaintiff had failed to arbitrate, and/or comply with the terms of the applicable CBA's arbitration provisions, his FLSA overtime claim required dismissal.  822 F.Supp.2d at 308.  In so finding, the Court explicitly noted:

> Whether presented as a factual dispute or a credibility determination, the underlying question remains the same, namely, was [p]laintiff entitled to receive a

night shift differential in his straight-time wage rate. The relevant standard is not whether an issue reserved for arbitration under the terms of the CBA would require extensive interpretation of the CBA, but rather whether the dispute is one that arises under and is governed by the contract. Article XVII of the CBA expressly sets forth the dispute resolution procedures governing any "alleged violation of any of the provisions of this Agreement ..., or any dispute involving the interpretation of this Agreement." The Plaintiff's right to receive night shift differentials derives solely from the CBA . . . and therefore his initial recourse for a violation of that right is through the CBA dispute resolution procedures. . . Generally, when a collective bargaining agreement provides for arbitration and grievance procedures for employee grievances, the aggrieved employee must make an attempt to exhaust the procedures set forth in the governing collective bargaining agreement prior to resorting to judicial relief. . . Accordingly, the Court finds [plaintiff] fail[ed] to exhaust his administrative remedies on the threshold issue of his entitlement to receive night shift differentials in his straight-time wage rate.

Id. at 308-09.

This is exactly applicable here. Whether Plaintiff's FLSA and/or NYLL overtime claims require interpretation of terms within the Atrium LPN CBA, such claims must be dismissed as preempted because Plaintiff's right to overtime "arises under and is governed by the" Atrium LPN CBA. Indeed, Plaintiff's right to overtime is explicitly covered by the Atrium LPN CBA's provisions. See Ex. 3, Atrium LPN CBA, Section 10, p. 7. Further, this CBA expressly sets forth a grievance procedure which provides all complaints, disputes, controversies or grievances arising in connection with the Atrium LPN CBA must be submitted to the CBA's mandatory grievance and/or arbitration procedure. See id., Sections 9(A), 9(B), p. 10. The Atrium LPN CBA's grievance provisions further explicitly note "[g]rievances arising from overtime claims . . . shall be presented within fifteen (15) months after the claim arose or after such claim should reasonably have become known, whichever is later." See id. at Section 9(B), p. 10 (emphasis added). Finally, the grievance procedure provision also provides "[f]ailure to give such notice

within the time frame set forth <u>shall be deemed a waiver</u> of the right to submit the grievance to arbitration." <u>See</u> <u>id.</u> (emphasis added).[8]

In light of these explicit provisions, and the provisions concerning overtime and wages detailed in Section I.A., <u>supra</u>, it cannot be disputed that Plaintiff's right to overtime compensation, if any, "derives solely from the CBA . . . and therefore his initial recourse for a violation of that right is through the CBA dispute resolution procedures." <u>Hoops</u>, 822 F.Supp.2d at 308-09. As such, given that Plaintiff failed to exhaust these procedural remedies, his FLSA and NYLL overtime claims should be dismissed as a matter of law.

Further, it is anticipated Plaintiff also will attempt to introduce certain cases which he will argue contradict the conclusion that the Atrium LPN CBA's grievance procedure contained a "clear and explicit waiver" sufficient to require Plaintiff's FLSA and/or NYLL overtime claims be dismissed as preempted. The cases to be advanced are distinguishable, and thus do not bear on the matter at hand. For instance, in <u>Rogers v. N.Y. Univ.</u>, the court found no preemption, but only because the applicable CBA's grievance provisions were too broad and general. <u>See</u> 220 F.3d 73 (2d Cir. 2000) (noting such provision only stated "any dispute concerning the interpretation, application, or claimed violation of a specific term of this Agreement" would be arbitrated, and otherwise did not specifically reference the claim advanced by plaintiff). Similarly, both <u>Ibarra v. United Parcel Serv.</u>, 695 F.3d 354 (5th Cir. 2012), and <u>Lawrence v. Sol G. Atlas Realty Co., Inc.</u>, 841 F.3d 81 (2d Cir. 2016), also found that the applicable CBA's grievance provisions were too broad and general to elucidate the "clear and explicit waiver" necessary for LMRA preemption. This is in stark contrast to the applicable CBA provision here,

---

[8] As noted above, this explicit mandatory arbitration procedure was collectively-bargained for as between 1199 and employers like Atrium in order to ensure that resolution of disputes covered by the Atrium LPN CBA were resolved by individuals with years of experience and knowledge relevant to said CBA, including experience with the types of "services" covered by the CBA and the method(s) by which employers "specifically authorized" said services in advance of making overtime "payable." <u>See</u> Castronovo Decl., at ¶ 22.

which explicitly indicates that any and all claims concerning <u>overtime</u> specifically are subject to arbitration.  <u>See</u> Ex. 3, Atrium LPN CBA, Section 9, p. 7.

Finally, <u>Conzo v. City of New York</u> is distinguishable on the grounds the relevant FLSA dispute procedure referenced therein was found to be voluntary (not mandatory), and thus was "coextensive" with the FLSA's requirements rather than a prerequisite which would require exhaustion first.  <u>See</u> 438 F.Supp.2d 432 (S.D.N.Y. 2006).  The Atrium LPN CBA does not contain the "permissive" and "non-waiver" language found in the <u>Conzo</u> CBA, and therefore it should not be read as co-extensive.  Rather, it should be read as a requirement, which would mandate Plaintiff's FLSA and/or NYLL overtime claims be dismissed.  <u>Cf.</u> <u>id.</u>

Given the foregoing, this Court should dismiss Plaintiff's FLSA and NYLL overtime claims as preempted by the LMRA and/or the NLRA, due to: (i) the "clear and explicit waiver" contained within the Atrium LPN CBA's grievance procedure provisions; (ii) Plaintiff's failure to exhaust such procedure prior to proceeding herein; and (iii) the general substantial deference to be afforded to collectively-bargained-for arbitration provisions.  <u>See</u> <u>Hoops</u>, 822 F.Supp.2d at 308-09; <u>Hamerslough</u>, 2010 WL 4537020; <u>Avet Coach Corp.</u>, 1978 WL 1575; <u>Mic-Ron Gen. Contractors, Inc.</u>, 908 F.Supp. 208.

**POINT II**

**THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S CLAIMS BROUGHT PURSUANT TO THE NYLL, AND INSTEAD SHOULD DISMISS THEM**

All but one (1) of Plaintiff's claims (<u>i.e.</u>, Plaintiff's NYLL overtime claim, Defendants purported unlawful deductions applied against Plaintiff, Defendants' purported failure to pay "agreed upon wages," and Defendants' alleged violation of the Wage Theft Prevention Act)

(collectively, the "Remaining State-Law Claims"), are strictly state-law claims.  See Ex. 1, Compl. ¶¶ 122, 126, 132, 135.

Thus, prior to considering adjudicating the Remaining State-Law Claims, this Court must choose to exercise supplemental jurisdiction over them.  See 28 U.S.C. § 1367(a), (c). The exercise of supplemental jurisdiction is within a court's sound discretion, and requires consideration of "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise supplemental jurisdiction." Lundy v. Catholic Hlth. Sys. of Long Island, Inc., 711 F.3d 106, 118 (2d Cir. 2013).  To the extent the federal predicate claim(s) relating to a state law claim have been dismissed, the balance of factors usually requires declination of supplemental jurisdiction. See, e.g., Volpe v. Am. Language Commc'n Ctr., Inc., 200 F.Supp.3d 428 (S.D.N.Y. 2016); Chen v. Major League Baseball, 6 F.Supp.3d 449 (S.D.N.Y. 2014).  In fact, as to NYLL claims, courts routinely find a dismissal of predicate FLSA claims generally requires dismissal of any NYLL claims grounded upon similar theories of legal relief.  See, e.g., Ruiz v. Citibank, N.A., 93 F.Supp.3d 279, 300-01 (S.D.N.Y. 2015); DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 27 F.Supp.3d 313, 329 (E.D.N.Y. 2014).

Given the fact Plaintiff's single predicate FLSA claim should be dismissed as preempted as noted above, this Court should decline to exercise supplemental jurisdiction over the Remaining State-Law Claims and instead should dismiss same.  This is because there will no longer be an operative federal claim which derives from the "same nucleus of operative facts" and thus serves as the necessary predicate for said Remaining Claims. See, e.g., Volpe, 200 F.Supp.3d at 428; Ruiz, 93. F.Supp.3d at 300-01; Chen, 6 F.Supp.3d at 449; DeSilva, Inc., 27 F.Supp.3d at 329 (E.D.N.Y. 2014).

## CONCLUSION

**WHEREFORE**, Defendants respectfully request this motion for summary judgment be granted in all respects, that the Complaint be dismissed in its entirety, that the relief requested therein be denied in all respects, that judgment be entered for Defendants, and that Defendants be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:        Mineola, New York
              February 15, 2018

                              **MELTZER, LIPPE, GOLDSTEIN &
                              BREITSTONE, LLP**

                              Attorney for Defendants
                              190 Willis Avenue
                              Mineola, New York 11751
                              (516)747-0300
                              champton@meltzerlipp.com
                              lmartinez@meltzerlippe.com

By: _____
                              Christopher P. Hampton, Esq.
                              Larry R. Martinez, Esq.