UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  MAR 1 3 2019  ★

BROOKLYN OFFICE

-------------------------------------------------- x

LENNOX FREEMAN, individually and on
behalf of all others similarly situated,

                      Plaintiffs,

       - against -

RIVER MANOR CORP. d/b/a ATRIUM CENTER FOR
REHABILITATION AND NURSING; RIVER MANOR
CARE CENTER, INC.; EXCELSIOR CARE GROUP, LLC;
RIVER MANOR ACQUISITION I, LLC;
RIVER MANOR ACQUISITION II, LLC; CONSTANCE LEIFER,
individually; and JOEL LIEFER, individually,

                      Defendants.

**MEMORANDUM & ORDER**

17 CV 05162 (RJD) (RER)

-------------------------------------------------- x

DEARIE, District Judge:

## OVERVIEW

Plaintiff Lenox Freeman ("Plaintiff" or "Freeman") brings this action on behalf of

himself and others similarly situated against his former employer, River Manor Corporation

d/b/a Atrium Center for Rehabilitation and Nursing and other related entities and individuals

(collectively, "Defendants").[1]  Freeman brings overtime wage claims under the Fair Labor

Standards Act ("FLSA") and New York Labor Law ("NYLL") as well as a series of related

NYLL claims.  Defendants move for summary judgment and seek dismissal of Plaintiff's claims

because (i) Section 301 of the Labor Management Relations Act ("Section 301" or "LMRA")

precludes Plaintiff's federal FLSA claims and preempts Plaintiff's state NYLL claims,[2] and

---

[1] It is undisputed that all Defendants are "covered employers" within the meaning of the Fair Labor Standards Act ("FLSA") with annual gross volume of sales in excess of $500,000.

[2] Section 301 of the LMRA *preempts* state-law claims that require interpretation of an underlying CBA . . . [s]imilarly, Section 301 *precludes* claims under the FLSA that involve interpretation of a CBA." Ramirez v. Riverbay Corp., 35 F. Supp. 3d 513, 522 (S.D.N.Y. 2014) (emphasis added). Compare Cantave v. Uptown Commc'ns & Elec. Inc., 2015 WL 4716539, at *4 (E.D.N.Y. Aug. 7, 2015) ("[A]lthough FLSA claims that are truly

(ii) Plaintiff's claims are subject to the grievance and arbitration procedures set forth in the CBA, which evince a "clear and unmistakable" intent to submit all overtime and employee classification claims to arbitration, regardless of whether they arise under state or federal law or under the terms of the CBA. Alternatively, Defendants argue that to the extent Section 301 precludes Plaintiff's FLSA claim, this Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining NYLL claims. For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

### I.    The Collective Bargaining Agreement

Plaintiff Freeman was a Licensed Practical Nurse ("LPN") employed by Defendants, owners and operators of a rehabilitation and care center in Brooklyn, New York, from approximately 2004 through March 2016. Compl., ECF No. 1, ¶ 2. Plaintiff and the putative class he seeks to represent were parties to a CBA between Defendants and the 1199 SEIU United Healthcare Workers East and the Greater New York Health Care Facilities Association, Inc. Defs.' Local Rule 56.1 Statement of Undisputed Facts ("56.1 SUF"), ECF No. 25, ¶ 12. The CBA provided for, *inter alia*, a 35-hour work week consisting of seven-hour work days, five consecutive days per week. ECF No. 23-3, at 10; 56.1 SUF, ¶ 21. Any work performed in excess of seven hours per day or 35 hours per week was compensated at a rate of time-and-a-half the employee's regular hourly rate, so long as the overtime work consisted of "services specifically authorized by the Employer." ECF No. 23-3, at 10; 56.1 SUF, ¶ 23. Plaintiff and all

---

independent of a CBA are enforceable, the LMRA will *preclude* such claims that are inextricably intertwined with the terms of a CBA" (emphasis added)) with Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Section 301 claim or dismissed as *preempted* by the federal labor-contract law" (emphasis added)).

others similarly situated worked one of three eight-hour shifts, with each shift including one hour of uncompensated break time automatically deducted from Plaintiff's paycheck. Compl., ECF No. 1, ¶¶ 4, 7. The CBA also permitted Defendants to make "reasonable working rules and regulations," including making determinations pertaining to work shifts, so long as those rules and regulations were "consistent with the terms and conditions of [the CBA]." ECF No. 23-3, at 38; 56.1 SUF ¶ 29.

The CBA's grievance and arbitration procedures provided that "[a]ll complaints, disputes, controversies or grievances . . . involving questions of interpretation or application of any clause of this Agreement, or any acts, conduct or relations between any of the parties hereto . . . shall first be discussed with the Employer or its designee." ECF No. 23-3, at 7. To the extent any "overtime claims" or "employee classification" disputes persisted between the CBA parties, the agreement required grievances be presented to the Employer in writing "within fifteen months after the claim arose or after such claim should reasonably have become known, whichever is later." ECF No. 23-3, at 7; 56.1 SUF ¶ 17. "Failure to give such notice within the time frame set forth shall be deemed a waiver of the right to submit the grievance to arbitration." ECF No. 23-3, at 7; 56.1 SUF ¶ 18. If, after the employee presents his or her "overtime claim" or "employee classification" dispute to the employer and "such complaint, dispute, controversy or grievance is not disposed of, it shall be submitted forthwith to the Impartial Chairman hereinafter named for arbitration and his decision shall be final and binding upon the parties hereto." ECF No. 23-3, at 7.

## II.    *Plaintiff's Employment*

Throughout his employment Plaintiff alleges that he and other LPNs were regularly required to work past their scheduled shift end times, in excess of 35 hours per week and without

3

compensation. Compl., ECF No. 1, ¶ 5. Plaintiff alleges he often worked anywhere from one to three and a half hours past his scheduled shift. Id. ¶ 104. Moreover, Plaintiff alleges he and other LPNs were regularly required to work through their one-hour uncompensated break times. Id. ¶ 105. Plaintiff claims that notwithstanding this overtime work, one hour of "break time" was automatically deducted from his weekly paycheck. Id. Plaintiff also alleges he worked past his scheduled shifts and during his hour-long breaks with the knowledge and consent of Defendants. Id. Ultimately, Plaintiff claims his work week not only exceeded 35 hours, as provided for in the CBA, but often exceeded 40 hours, entitling him to overtime under the FLSA. Id. ¶ 106-08. However, Defendants contend Plaintiff is not entitled to overtime wages because his after-hours work did not consist of "services specifically authorized by the Employer." 56.1 SUF ¶¶ 30, 33. In support of his remaining NYLL claims, Plaintiff alleges Defendants failed to pay his agreed upon wages and to provide accurate wage statements and made unlawful deductions from his paycheck related to transportation, uniforms, as well as other "unknown deductions" notated in his pay stub as "AMT LNGVITY," "NR," "TR," "UF N" and "LNGVTT." Compl., ECF No. 1, ¶ 109-10.

### III. Plaintiff's Federal Court Litigation

Plaintiff filed his Complaint on August 31, 2017 bringing claims under the FLSA and NYLL principally for unpaid overtime wages. Compl., ECF No. 1. Defendants argue Section 301 of the LMRA precludes Plaintiff's federal claims and preempts Plaintiff's state law claims. Defs.' Mem. in Supp. of Summ. J., ECF No. 24, at 2-3 ("Defs.' Br."). Section 301 of the LMRA "governs claims . . . substantially dependent on" or "inextricably intertwined" with analysis of a CBA, Johnson v. D.M. Rothman Co., Inc., 861 F. Supp. 2d 326, 331-32 (S.D.N.Y. 2012), and provides a federal cause of action for employees against their employers for breach of a CBA

4

once the employee "exhaust[s] grievance procedures provided by the relevant [CBA]," including any arbitration procedures. Dougherty v. American Tel. & Tel. Co., 902 F.2d 201, 203 (2d Cir. 1990). The principles underlying Section 301 reflect the judiciary's preference for enforcing previously "agreed-upon contractual remedies over judicial intervention." Kazolias v. IBEW LU 363, 2012 WL 6641533, at *22 (S.D.N.Y. Dec. 11, 2012) (noting "exhaustion gives unions and employers an opportunity to resolve disputes" (citing Republic Steel Corp. v. Maddox, 379 U.S. 650, 653 (1965))); see also Baguidy v. Boro Transit Inc., 283 F. Supp. 3d 14, 24 (E.D.N.Y. 2017) ("[A]n employee is required to attempt to exhaust any grievance or arbitration remedies provided in the [CBA] . . . subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement" (citing DelCostello v. Int'l Bd. Of Teamsters, 462 U.S. 151, 163-65 (1983))).

Here, Defendants assert Plaintiff's federal and state law claims are either precluded or preempted under Section 301 because they are "substantially dependent" on and "inextricably intertwined" with an analysis of [the] CBA"—in particular whether Plaintiff was performing "specifically authorized" "services" during his alleged overtime hours. See Johnson, 861 F. Supp. 2d at 331-32; Defs.' Br., ECF No. 24, at 2-3. Alternatively, Defendants submit Plaintiff's remaining NYLL claims are pendent state law claims that should be dismissed for lack of supplemental jurisdiction absent a proper FLSA anchor claim. Id. at 3. After Plaintiff filed his Complaint and before discovery, Defendants filed the instant motion for summary judgment and accompanying memorandum of law seeking to dismiss Plaintiff's claims in their entirety. Defs.' Mot. Summ. J, ECF No. 22, Defs.' Br., ECF. No. 24.

First, the Court finds Plaintiff's FLSA claim mischaracterizes the source of his overtime entitlement and ultimately requires an analysis of the CBA: Plaintiff maintained a 35-hour work

week and he is not entitled to FLSA overtime wages for work performed between 35 and 40 hours per week. Indeed, "overtime" has a technical and restricted definition under the FLSA and as a result, Plaintiff's right to "overtime" wages *under* 40 hours per week arises solely out of the CBA. Even if Plaintiff worked over 40 hours per work week and is entitled to FLSA overtime wages, his FLSA claim is nevertheless precluded by Section 301 because attempting to reach Plaintiff's FLSA overtime claim out of sequence with his contractual overtime claim for hours worked under 40 per week would be impractical, unworkable and would go against the judiciary's preference for arbitration. Second, Plaintiff's NYLL claims for overtime wages, "agreed upon wages," inaccurate wage statement and unlawful wage deductions similarly depend upon an analysis and interpretation of the CBA and are thus preempted by Section 301.[3] Finally, even though the arbitration clause in the CBA lacks the specificity required to evince a "clear and unmistakable" intent to arbitrate purely statutory claims, because Plaintiff's statutory claims are either precluded or preempted by Section 301 and require interpretation of the CBA, the "clear and unmistakable" standard does not apply.

## LEGAL STANDARD

### I. Summary Judgment Standard

Under Rule 56 a party is entitled to summary judgment if, on the record before the Court, there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[3] In the alternative, Defendants argue that because Plaintiff's FLSA claim must be dismissed pursuant to Section 301, the Court should simply decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. See e.g., Diaz v. Amedeo Hotels Ltd. P'Ship, 2016 WL 1254243, at *5 (E.D.N.Y. Mar. 29, 2016) ("When all of a plaintiff's federal claims are dismissed at summary judgment, district courts routinely decline to exercise supplemental jurisdiction over any remaining state law claims."). However, because Plaintiff's state law claims are "in fact preempted by [Section 301]" the Court retains federal question jurisdiction over Plaintiff's state law claims and need not undertake an analysis under 28 U.S.C. § 1367. Vera v. Saks & Co., 335 F.3d 109, 113-14 (2d Cir. 2003) ("The unusual preemptive power accorded section 301 extends to create federal jurisdiction even when the plaintiff's complaint makes no reference to federal law" (citing Livadas v. Bradshaw, 512 U.S. 107, 122 n.16 (1994))).

a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that "no genuine issue of material fact exists" while the court views all evidence in the light most favorable to the non-moving party. Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002). "Nevertheless, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial." Shannon v. New York City Transit. Auth., 332 F.3d 95, 99 (2d Cir. 2003); Diaz, 2016 WL 1254243, at *2 ("An issue of fact is 'material' . . . if it might affect the outcome of the suit under the governing law, while an issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The Court's role "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).

## II.  *Workers' Rights Under the FLSA and NYLL*

Plaintiff pleads wage-related claims arising out of the FLSA and NYLL. The FLSA and NYLL provide overtime wages for employees who work over 40 hours per week at a rate "not less than one and one-half times the regular rate" of pay. 29 U.S.C. § 207(a)(1); 12 N.Y. Comp. Codes R. & Regs. § 142-2.2 (2012). As a general matter, these rights to overtime wages exist independently of any contractually-created rights to overtime wages. Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 745 (1981).

However, if an employee brings FLSA or NYLL claims "substantially dependent" on or "inextricably intertwined" with an analysis of the CBA's terms of employment, then Section 301 of the LMRA, which provides a cause of action for breach of a CBA, will govern the procedural trajectory of those statutory claims. Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987); Dougherty, 902 F.3d at 203 (where plaintiffs "formulate their complaint as based on" state or

federal wage law "that formulation is not binding upon [the court] where rights and obligations under the pertinent collective agreement are *inextricably involved* in the underlying claim"); Johnson, 861 F. Supp. 2d at 331-32 ("The preemptive effect of [Section] 301 assures that arbitration agreements are enforced"); see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988) (finding Section 301 promotes "the peaceable, consistent resolution of labor management disputes"). Section 301 mandates that to the extent an employee brings statutory claims "substantially dependent" on or "inextricably intertwined" with the CBA's terms of employment, the employee must follow the CBA's grievance and arbitration procedures before bringing a claim in federal court. Dougherty, 902 F.2d at 203-04; Cantave, 2015 WL 4716539, at *5 ("Before bringing an action pursuant to [Section] 301 of the LMRA, the employee must exhaust grievance procedures provided by the relevant CBA").

Accordingly, Section 301 precludes FLSA claims and preempts state labor law claims involving interpretation of a CBA in order to ensure "arbitration agreements are enforced" and to promote the consistent treatment of CBAs under federal law. Johnson, 861 F. Supp. 2d at 332 (Section 301 "will preclude such claims that are *inextricably intertwined* with the terms of a CBA" (emphasis added) (citing Lingle, 486 U.S. at 404)).[4] The "legal character" of an employee's statutory claim must thus be capable of a "truly independent" resolution to be enforceable in federal court without first exhausting the CBA's grievance and arbitration procedures. Dougherty, 902 F.2d at 203-04.

---

[4] However, a claim is not "inextricably intertwined" with the interpretation of a CBA simply because the CBA must be consulted. Livadas, 512 U.S. at 123-24; Vera, 335 F.3d at 115 (finding Section 301 does not mandate preemption of state law claims requiring "mere referral" to a CBA to determine "information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled").

8

Finally, collectively bargained agreements to arbitrate "truly independent," as opposed to "inextricably intertwined," *statutory* claims must be "clear and unmistakable." Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 80-81 (1998); Lawrence v. Sol G. Atlas Realty Co., Inc., 841 F.3d 81, 83 (2d Cir. 2016). A "clear and unmistakable waiver exists where one of two requirements is met: (1) the arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action arising out of his employment to arbitration, or (2) the arbitration clause specifically references or incorporates a statute into the agreement to arbitrate disputes." Alderman v. 21 Club Inc., 733 F. Supp. 2d 461, 469 (S.D.N.Y. 2010); see also Lawrence, 841 F.3d at 84 (a "clear and unmistakable" waiver "must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims" (citing Ibarra v. United Parcel Serv., 695 F.3d 354, 359-60 (5th Cir. 2012))). This is an "exacting standard" and waiver provisions that can be construed to refer only to contractual matters in dispute, "even if the issues involved are coextensive" with a statutory right, are not "clear and unmistakable". Lawrence, 841 F.3d at 84-85 (CBA that "broadly prohibits the employer from engaging in unlawful discrimination and compels arbitration of 'disputes' regarding this prohibition" *did not* make "unmistakably clear that 'disputes' included statutory discrimination claims").

## DISCUSSION

### I.    *Plaintiff's Overtime Wage Claims*

#### a.  FLSA Overtime Wages

Plaintiff alleges he is entitled to overtime wages under the FLSA because he worked over 40 hours per week without payment. Compl., ECF No.1, ¶¶ 106, 112-16. Plaintiff contends that because his overtime claim seeks wages in accordance with "the express language of the FLSA,"

his claim does not require interpretation of the CBA and must be resolved in federal court rather than in accordance with his CBA's arbitration procedures. Pl. Opp. to Defs.' Mot. Summ. J., ECF No. 26, at 4 ("Pl. Br."). Defendants counter that Plaintiff's entitlement to *any* overtime wages—triggered once an employee works more than 35 hours per week performing "services specifically authorized by the Employer"—depends on an interpretation of certain terms of art in the CBA and must be resolved in accordance with the CBA's arbitration procedures. Defs.' Br., ECF No. 24, at 1-3. Otherwise, Defendants submit, the Court, rather than an arbitrator with "intimate knowledge of the work done by [LPNs in Plaintiff's union] and/or how other employers covered by the Atrium LPN CBA previously have specifically authorized overtime services," would be tasked with interpreting the CBA and determining "whether such services were services [Plaintiff's union] intended to be covered by the Atrium LPN CBA." Id. at 10-11. Defendants contend such a result would run contrary to the exhaustion principles underlying Section 301 of the LMRA as well as the judiciary's preference for arbitration. The Court agrees Plaintiff's FLSA claim is precluded by Section 301 of the LMRA, but not because the CBA's overtime provision applies as broadly as Defendants appear to argue. Plaintiff's FLSA overtime claim is precluded by Section 301 because, as a practical matter, it is inextricably intertwined with his separate contractual entitlement to overtime wages for hours worked between 35 and 40 per week and the two entitlements create a "hybrid" overtime claim best resolved in accordance with the parties' CBA.

Plaintiff is correct that he is entitled to FLSA overtime wages for work performed in excess of 40 hours per week; however, Plaintiff ignores the fact that his CBA caps his work week at 35 hours and provides a contractual right to overtime for hours worked between 35 and 40 per week only so long as he performs "services specifically authorized by the Employer."

ECF No. 23-3, at 10; 56.1 SUF, ¶¶ 21, 23. Though the FLSA does not define overtime "work" quite as narrowly, the statute only applies to overtime work exceeding 40 hours per week.[5] Thus, before Plaintiff is even eligible to receive FLSA overtime, a trier of fact must assess Plaintiff's wage claim for hours worked between 35 and 40 per week—an undertaking that is wholly dependent on an interpretation of the CBA's terms of employment and thus effectively off limits to the Court in light of Section 301.[6]

Accordingly, even though it may "ultimately be necessary to decide an FLSA claim," for work exceeding 40 hours, as a practical matter Plaintiff's FLSA claim is "premature" because "the threshold question"—whether Plaintiff is entitled to contractual overtime for hours worked between 35 and 40—"is a factual dispute arising under the CBA and subject to the CBA's grievance procedures." Hoops v. Keyspan Energy, 822 F. Supp. 2d 301, 303 (E.D.N.Y. 2011). To that end, Plaintiff's successive overtime wage claims effectively comprise a single "hybrid" claim for overtime wages arising out of *both* the CBA and the FLSA. Practically, the two parts of this "hybrid" claim cannot be resolved out of order and must be evaluated in the sequence in which they accrued. This requires resolution of Plaintiff's contractual overtime claim *before* Plaintiff's FLSA overtime claim. Compare Hoops, 822 F. Supp. 2d at 306 (finding Plaintiff's right to FLSA overtime wages depended on resolution of his entitlement to a "night shift differential" which was "a contractual right under the CBA" that "must be submitted to the grievance procedures in the CBA") with Alderman, 733 F. Supp. 2d at 469 (S.D.N.Y. 2010)

---

[5] Overtime "work" is compensable under the FLSA if it is "integral and indispensable to the [employee's] principal activities." Adams v. Alcoa, Inc. 822 F. Supp. 2d 156, 162 (N.D.N.Y. 2011); see also Gorman v. Consolidated Edison Corp., 488 F.3d 586, 594 (2d Cir. 2007)).

[6] "Overtime" has a technical and restricted definition under the FLSA and unless and until FLSA overtime thresholds—here, over 40 working hours per week—are met and exceeded, the FLSA's statutory entitlement to overtime rates is inapplicable.

(where CBA "only guarantees" an 18% gratuity, a "claim for more than 18% is not properly one under the CBA" but an *independent* statutory claim under NYLL that need not be resolved in accordance with the CBA's grievance procedures).

To find otherwise would place the Court in the position of attempting to artificially isolate and resolve Plaintiff's FLSA claim without encroaching on "forbidden ground"— Plaintiff's entitlement to contractual overtime. Johnson, 861 F. Supp. 2d at 333 ("[T]he Court cannot address Plaintiffs' [FLSA overtime] claims without digging into forbidden ground," i.e., whether wage differentials available under the CBA should be included in Plaintiff's FLSA overtime); see also Caterpillar, Inc., 482 U.S. at 394. But see Gyecsek v. J.P. Hogan Coring & Sawing, Corp., 2019 WL 1059998 (S.D.N.Y. Mar. 6, 2019) (Plaintiff stated a plausible and *independent* FLSA overtime claim where he maintained a *40-hour* work week and alleged work performed in excess of 40 hours); Polanco v. Brookdale Hosp. Medical Ctr., 819 F. Supp. 2d 129 (2011) (same). If Plaintiff's entitlement to overtime for work *under* 40 hours per week is "forbidden ground" to the Court and the Court cannot realistically address Plaintiff's overtime for *over* 40 hours in a vacuum, then the task of resolving Plaintiff's "hybrid" overtime claim must fall to an arbitrator who will bear in mind the longstanding principle that "FLSA rights cannot be abridged by contract" for overtime hours *over* 40 hours per week. Barrentine, 450 U.S. at 740.[7] This approach strikes the appropriate balance between the judiciary's strong preference for "agreed-upon contractual remedies" and reluctance to undermine previously bargained-for arbitration procedures, Kazolias, 2012 WL 6641533, at *22, with the need for

---

[7] To be clear, if Plaintiff actually worked over 40 hours per week and the CBA's language regarding "services" "specifically authorized" by Defendants covers something less than "work" authorized by the FLSA, the FLSA standard must govern unless the CBA contains a "clear and unmistakable" waiver of its members' right to FLSA overtime. See Wright, 525 U.S. at 80 ("Although [the right to a judicial forum] is not a substantive right . . . [it] is of sufficient importance to be protected against less-than-explicit union waiver in a CBA").

FLSA rights to "take precedence over conflicting provisions in a collectively bargained compensation arrangement," Barrentine, 450 U.S. at 740-41; see supra note 7.

Indeed, though the nature of Plaintiff's overtime work in Polanco is virtually identical to the work alleged here, in Polanco the Court did not need to unearth "forbidden ground"— overtime wages for hours worked *less than* 40 hours per work week. Johnson, 861 F. Supp. 2d at 333. The allegations in Polanco "assert[ed] an independent FLSA violation that does not rest upon any interpretation of the CBA." Id; see also Gyecsek, 2019 WL 1059998, at *4. Here, on the other hand, Plaintiff "has not identified any source" of his right to overtime for hours worked between 35 and 40 per work week "other than a [CBA]," Doyle v. United Airlines, Inc., 914 F. Supp. 2d 325, 337 (E.D.N.Y. 2012), and as a practical matter the Court cannot leap over Plaintiff's contractual overtime to reach his FLSA overtime claim. Such a result would be unworkable and in conflict with Section 301's primary purpose—to ensure "arbitration agreements are enforced" and promote uniform treatment of CBAs under federal law. Johnson, 861 F. Supp. 2d at 332 (citing Lingle, 486 U.S. at 404).

Plaintiff's FLSA overtime claim is thus precluded by Section 301. As a general matter, employee-plaintiffs are not foreclosed from pursuing FLSA claims for overtime wages in federal court that are "truly independent" of contractual rights under a CBA, Gyecsek, 2019 WL 1059998, at *4; Polanco, 819 F. Supp. 2d at 134-35; however, in this case, Plaintiff brings a "hybrid" overtime claim arising out of *both* the CBA and the FLSA. Plaintiff cannot bypass his CBA's grievance and arbitration procedures in an attempt to resolve successive overtime claims out of order and ultimately seek relief for contractually-conferred overtime under the guise of an already dubious entitlement to statutory overtime wages.[8] Stolarik v. New York Times Co., 323

---

[8] Setting aside Plaintiff's contractual right to overtime, it is not even clear Plaintiff has adequately pleaded an FLSA overtime claim for hours worked over 40 per work week. To state an FLSA unpaid overtime claim, a plaintiff "must

F. Supp. 3d 523, 543 (S.D.N.Y. 2018) ("Allowing Plaintiff to evade the requirements of [Section 301] by relabeling his contract claim as a [statutory] claim would elevate form over substance and contravene the policies animating Section 301" (citing Allis-Chalmers, 471 U.S. at 211)); Williams v. Comcast Cablevision of New Haven, Inc., 322 F. Supp. 2d 177, 182 (D. Conn. 2004) ("In making the preemption determination, it is the substance of plaintiff's claim, and not its characterization in the complaint, that controls").

### b. NYLL Overtime Wages

"The NYLL largely adopts the same standard as the FLSA with regard to overtime compensation." Fermin v. Las Delicias Peruanas Restaurant, Inc., 93 F. Supp. 3d 19, 43 (E.D.N.Y. 2015); NYLL § 663 (employees have a private right of action against their employer if they are paid "less than the wage to which [they are] entitled under the provisions of [Article 19] of the NYLL").[9]

Therefore, for the reasons described above with respect to Plaintiff's FLSA claim, Plaintiff's NYLL overtime claim is, as a practical matter, "inextricably intertwined" with his predicate contractual overtime claim for hours worked between 35 and 40 per week. It would be similarly impractical and unworkable to resolve Plaintiff's NYLL claim for overtime wages in

---

provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." Watkins v. First Student, Inc., 2018 WL 1135480, at *8 (S.D.N.Y. Feb. 28, 2018) (citing Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013)). Allegations that a plaintiff "typically" or "occasionally" or "often" worked certain shifts or missed certain breaks are inadequate for pleading purposes because "such allegations invite speculation." Id. (citing Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114-15 (2d Cir. 2013)). A plaintiff must allege "particular facts" to allow a court to conclude that he "plausibly was not compensated for overtime." Id. Here, Plaintiff provided some information regarding the nature and extent of "overtime" worked, but Plaintiff "failed to identify the weeks during which he worked more than forty hours and the specific number of hours he worked during such weeks." Id. (citing Johnson v. Equinox Holdings, Inc., 2014 WL 3058438, at *4 (S.D.N.Y. July 2, 2014). This lack of specificity undermines the plausibility of Plaintiff's FLSA claim and only reinforces the Court's conclusion that any overtime wages due to Plaintiff are at least initially dependent upon a contractual right created by the CBA.
[9] Article 19 of the NYLL requires employers pay employees "for overtime at a wage rate of one a one-half times the employee's regular rate" for hours worked in excess of 40 hours in one work week. Polanco, 819 F. Supp. 2d at 133 (citing 12 N.Y. Comp. Codes. R. & Regs. § 142-2.2).

excess of 40 hours per week without first resolving his contractual right to overtime wages for hours worked between 35 and 40 per week. Lingle, 486 U.S. at 399 (Section 301 preempts state law claims "founded directly on rights created by [CBAs]" as well as "claims substantially dependent upon an analysis of a collective bargaining agreement"). Plaintiff's NYLL overtime claim is thus preempted by Section 301 and must be resolved in accordance with the CBA's grievance procedures. Vera, 335 F.3d at 116; Johnson, 861 F. Supp. 2d at 332-333.

## II. Plaintiff's Remaining NYLL Claims

Plaintiff's remaining NYLL claims relate to (i) failure to pay agreed upon wages, NYLL § 191(1)(d), (ii) unlawful wage deductions, NYLL § 193 and (iii) failure to provide accurate wage statements, NYLL § 195(3). Like Plaintiff's overtime wage claims, Plaintiff's remaining NYLL claims are "inextricably intertwined with consideration of the terms of the [CBA]" such that they are preempted by Section 301 and must be resolved in accordance with the CBA's grievance procedures. Allis-Chalmers, 471 U.S. at 213.

### a. Agreed upon wages

NYLL § 191(1)(d) requires employees "be paid the wages earned *in accordance with the terms of employment*, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." NYLL § 191(1)(d) (emphasis added). If an employee's "agreed upon wages" require "mere consultation" with a CBA, the claim will not be preempted by Section 301. Johnson, 861 F. Supp. 2d at 332 ("[Section] 301 does not mandate preemption of state law claims requiring 'mere referral' to a CBA" "for information such as rate of pay"). Similarly, where an employee's entitlement to statutory wages is undisputed and the only question is whether those wages were actually paid, Section 301 does not mandate preemption. Scott v. City of New York, 592 F. Supp. 2d 386, 406 (S.D.N.Y. 2008) (statutory claims not

preempted where plaintiffs allege that shift differentials to which they are indisputably entitled were not properly included in overtime pay). However, if "the reported [NYLL] violation is based on a failure to pay . . . in accordance *with the terms of a CBA*," Ellis v. Harpercollins Publishers, Inc., 2000 WL 802900, at *2 (S.D.N.Y. Jun. 21, 2000) (emphasis added), and those terms require substantive interpretation and analysis, the plaintiff's agreed upon wage claim will be preempted by Section 301. See also Hoops, 822 F. Supp. 2d at 307-08 (finding preemption because "the Court cannot adjudicate the statutory claim without ruling on a contract claim").

The terms of Plaintiff's employment, his entitlement to overtime, shift differentials and longevity and experience payments, are set forth in the CBA. However, Plaintiff's entitlement to these wages is not incontrovertible. Cf. Scott, 592 F. Supp. 2d at 406. For example, Plaintiff is not entitled to overtime wages for hours worked between 35 and 40 per week unless he performs "specifically authorized" "services"—terms of art requiring analysis and interpretation of the CBA. Therefore, the Court cannot determine whether Plaintiff was paid "wages in accordance with *the terms of [his] employment*," NYLL § 191(1)(d), without first interpreting the terms of the CBA and resolving whether Plaintiff performed overtime "services specifically authorized" by Defendants, see Hoops, 822 F. Supp. 2d at 307-08. Plaintiff's agreed upon wage claim is thus preempted by Section 301.

      b. Unlawful Wage Deductions

Under NYLL § 193 "no employer shall make any charge against wages, or require an employee make any payment by separate transaction unless such charge or payment is permitted under subdivision one of this section or is permitted or required under any provision of a current collective bargaining agreement." NYLL § 193; see also Levy v. Verizon Info. Servs., Inc., 498 F. Supp. 2d 586, 598 (E.D.N.Y. 2007).

Plaintiff alleges a variety of unlawful wage deductions, including deductions for transportation, uniforms and "other deductions noted as: "AMT LNGVITY," "NR," "TR," "UF N," and "LNGVITT." However, determining whether these deductions were "permitted or required under any provision of [the CBA]," NYLL § 193, requires interpretation of the CBA and the parties' prior course of dealing, Stolarik, 323 F. Supp. 3d at 543-44 (where "the crux of Plaintiff's claim" is that the Defendant failed to pay him "the salary set forth in the governing [CBA]. . . it is clear that Plaintiff is seeking to enforce the CBA itself and not seeking to enforce state rights independent of the CBA").

For example, the CBA provides that "[t]he Employer shall furnish and maintain all uniforms of Employees, except that where an Employee furnishes and maintains his or her own uniform such Employee *shall receive* an allowance of two dollars and fifty cents per week." ECF No. 23-3, at 20 (emphasis added). The CBA is silent with respect to whether the employer can *deduct* the cost of "furnish[ing]" and "maintain[ing]" a uniform from an employee's paycheck. Cf. In re World Trade Center Disaster Site Litigation, 754 F.3d 114, 122 (2d Cir. 2014) ("In limited circumstances, a court may supply a missing term in a contract . . . if the contract is ambiguous and the term may be fairly and reasonably fixed by the surrounding circumstances and the parties' intent"). Accordingly, to resolve this claim the Court would "have to ascertain whether the [uniform] deductions were permitted under the CBA[] . . . plainly requir[ing] the court's interpretation of the CBA[]" and whether, the $2.50 uniform *allotment* for employees furnishing their own uniforms implies a $2.50 uniform *deduction* for employees who receive their uniform from the employer. Levy, 498 F. Supp. 2d at 597-98; see also Vera, 335 F.3d at 115 n.1 (finding that plaintiff's claims required interpretation of a CBA and that in the context of Section 301 proceedings "a court or arbitrator might fill [a] gap" left in the CBA "by

interpreting the silence of the contract as pregnant in light of other provisions" (citing <u>Nat'l</u>

<u>Metalcrafters Div. of Keystone Consol. Indus. v. McNeil</u>, 784 F.2d 817, 824 (7th Cir. 1986))).

Consistent with the exhaustion principles underlying Section 301 and the judicial preference for

arbitration, this interpretive analysis is best undertaken by "individuals with intimate knowledge"

of the terms of the CBA and "how other employers covered by the Atrium LPN CBA" may have

dealt with similar issues. Defs.' Br., ECF No. 24, at 11. Plaintiff's deductions claim is thus

preempted by Section 301 and his wage deduction claim must be resolved in accordance with the

CBA's dispute resolution procedures.

      c.  Failure to Provide Accurate Wage Statements

NYLL § 195(3) requires employers "furnish each employee with a statement with every

payment of wages" including "the regular hourly rates of pay; the overtime rate or rates of pay;

the number of regular hours worked, and the number of overtime hours worked." Plaintiff

alleges Defendants' wage statements did not accurately account for or include wages for

Plaintiff's overtime work. Resolving Plaintiff's wage statement claim thus requires interpreting

the CBA's terms of employment and specifically whether Plaintiff was entitled to overtime

wages for the hours worked between 35 and 40 in a work week. As discussed above, this inquiry

requires more than "mere consultation" with the CBA because it requires interpretation of

specific terms of art, <u>cf.</u> <u>Scott</u>, 592 F. Supp. 2d at 406, and as a result Plaintiff's wage statement

claim is preempted by Section 301.


*III.*    *Clear and Unmistakable Intent to Arbitrate*

Defendants also argue that because the CBA conveys a "clear and unmistakable" intent to arbitrate statutory claims related to "overtime or employee classification," regardless of whether Plaintiff's claims are precluded or preempted by Section 301, they must be resolved in accordance with the CBA's grievance and arbitration procedures, and not in federal court. In response, Plaintiff contends that the CBA does not convey a "clear and unmistakable" intent to arbitrate statutory claims because the relevant grievance provisions are "too generalized" and fail to "identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims." Pl. Br., ECF No. 26, at 10-11. The Court agrees that the CBA does not evince a "clear and unmistakable" intent to commit purely statutory claims to arbitration. Nevertheless, because Plaintiff's statutory claims are either precluded or preempted by Section 301 the "clear and unmistakable" standard is inapplicable and the CBA's grievance and arbitration provisions govern what are, fundamentally, Plaintiff's contract claims.

The "clear and unmistakable" waiver standard is "exacting" and "based on a general disfavoring of Unions waiving individual rights." Abdullayeva v. Attending Homecare Servs., Inc., 2018 WL 1181644, at *5 (E.D.N.Y. Mar. 5, 2018). If a CBA does not name or incorporate a particular statute into the arbitration clause or "expressly specify that all disputes, *including those arising under federal law*, are subject to arbitration," the CBA arbitration provision is "too broad and general to demonstrate the requisite clear and unmistakable intent to submit *all federal statutory claims* to arbitration." Alderman, 733 F. Supp. 2d at 470 (emphasis added); see also Lawrence, 841 F.3d at 83-85.

Here, the relevant CBA provision states "[a]ll complaints, disputes, controversies or grievances . . . involving questions of interpretation or application of any clause of this Agreement, or any acts, conduct or relations between any of the parties hereto . . . shall first be

discussed with the Employer or its designee" and then goes on to explain that "[g]rievances arising from overtime claims, Employee classification claims, and/or matters relating to the Employee's classification, shall be presented within fifteen months after the claim arose or after such claim should reasonably have become known, which ever is later. Failure to give such notice within the time set forth herein *shall be deemed a waiver* of the right to submit the grievance to arbitration as hereinafter set forth." ECF No. 23-3, at 7 (emphasis added).

Evaluating the overtime and employee classification grievance provision in light of the more general grievance procedures that precede it, the overtime and employee classification provision does not represent a "clear and unmistakable" waiver. <u>First</u>, the CBA's grievance procedures refer to disputes "involving questions of interpretation or application" *of the CBA* "or any acts or relations between any of the parties [thereto]" and then go on to describe more detailed grievance procedures for overtime and employee classification disputes without ever referring to the FLSA or any other federal or state law. It would be reasonable to apply the same limiting principle to the "overtime and employee classification" grievance procedures as in the immediately preceding provision, which limits overtime and employee classification disputes to those "involving questions of interpretation or application" *of the CBA*. ECF No. 23-3, at 7. <u>Second</u>, nowhere does the CBA contain an explicit waiver for all statutory claims or at least all FLSA and NYLL claims. <u>Alderman</u>, 733 F. Supp. 2d at 470. The CBA does not make it "clear" or "unmistakable" that the overtime and employee classification grievance procedures apply beyond disputes arising under the CBA and "involving questions of interpretation or application of the CBA."

Nevertheless, because Plaintiff's claims are precluded or preempted by Section 301 and his entitlement to overtime wages "hinges on [a] contractual right," "his initial recourse . . . is

through the CBA dispute resolution procedures" and the "clear and unmistakable" standard does not apply. Hoops, 822 F. Supp. 2d at 307-08; cf. Alderman, 733 F. Supp. 2d at 469 (where CBA "only guarantees" employees an 18% gratuity, a "claim for more than 18% is not properly one under the CBA" but a statutory claim under the NYLL). Plaintiff's entitlement to overtime wages falls outside the FLSA, at least initially, but within the CBA's scope of coverage. As a result, Plaintiff's claim to overtime wages "is not properly one under the FLSA," but a contract claim under the CBA and subject to the CBA's dispute resolution procedures. Alderman, 733 F. Supp. 2d at 469.

## CONCLUSION

Defendants' motion for summary judgment is granted and Plaintiff's FLSA and NYLL claims are dismissed. Plaintiff's FLSA claim is precluded and Plaintiff's NYLL claims are preempted by Section 301 of the LMRA because, as a practical matter, they are inextricably intertwined with the CBA and resolving these claims in federal court would disturb the judiciary's preference for agreed-upon contractual remedies. Accordingly, Plaintiff's overtime and other wage-related claims must be resolved in accordance with the CBA's grievance and arbitration procedures.

SO ORDERED.

Dated: Brooklyn, New York
March _13_, 2019

s/Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge